IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA,      )
                               )
                               )
                               )
     Plaintiff-Appellee,       )
                               )   1:12cr166 (JCC/TRJ)
          v.                   )
                               )
MATTHEW ELTON CROW,            )
                               )
     Defendant-Appellant.      )


**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Matthew
Crow's ("Defendant") Rule 58(g)(2)(B) appeal from the judgment
of conviction entered after a bench trial in the magistrate
court for Driving Under the Influence of alcohol in violation of
36 C.F.R. § 4.23(a)(1).  For the reasons stated below, the Court
will affirm the decision of the Magistrate Judge and will uphold
Defendant's conviction for Driving Under the Influence of
alcohol.

## I. Background

### A. Factual Background

At approximately 2:00 PM on January 7, 2012, a
witness, Patricia Mackay-Monheim, was driving south on George
Washington Parkway near the Route 395 bridge when she saw a

Mustang driving "alarmingly fast" on the off-ramp from the bridge. (Tr. [Dkt. 8-1] at 11.) The off-ramp in question includes a "dramatic" or "severe curve" followed by a "very short merge" onto the Parkway. (*Id.* at 11, 18-19.) As the car approached this curve on the ramp, the driver lost control of the vehicle, went sideways across a grassy area between the ramp and the Parkway and across two lanes of traffic on the Parkway, and then hit a guard rail and another vehicle, a Jeep which had been traveling alongside Ms. Mackay-Monheim on the Parkway. (*Id.* at 11-13.)

After the accident, the two cars involved in the accident and Ms. Mackay-Monheim pulled to the side of the Parkway. (*Id.* at 12, 14.) At that time, Ms. Mackay-Monheim called 911, spoke to the driver of the Mustang, and asked him if he needed an ambulance. (*Id.* at 14-15.) At trial, Ms. Mackay-Monheim identified Defendant as the driver of the Mustang, and Defendant stipulated to identity. (*Id.* at 14.) Ms. Mackay-Monheim testified that she thought Defendant's behavior immediately following the accident was "odd" because he was "oddly calm" in comparison to the other accident participants who were "quite upset and rather frightened" and "upset and quite agitated." (*Id.* at 16.)

At approximately 2:32 PM that day, United States Police Officer Martin responded to the reported accident

2

involving Defendant. (*Id.* at 23.) Upon arriving at the scene, Officer Martin observed Defendant standing on the right shoulder of the Parkway. (*Id.* at 24.) Officer Martin also observed Ms. Mackay-Monheim and her husband at the accident scene. (*Id.* at 25.) After making sure no one was injured, identifying the drivers, and clearing debris from the road, Officer Martin approached Defendant. (*Id.* at 24, 46-47.) At that time, Officer Martin noticed a "strong order" of alcohol while in Defendant's presence. (*Id.* at 24.) Officer Martin asked Defendant what had happened, and Defendant stated that he had lost control on the ramp from Route 395 to the Parkway and caused the accident. (*Id.* at 25.) Officer Martin also asked Defendant where he had come from, and Defendant replied that he had been coming from the Verizon Center where he had been out with friends. (*Id.*) Officer Martin then asked him if he had had anything to drink. Defendant stated that he had not, but admitted his friends had. (*Id.*)

Based on the order of alcohol that he observed emanating from Defendant, Officer Martin asked Defendant to conduct some field sobriety tests. (*Id.* at 30.) Officer Martin first checked and confirmed with Defendant that he did not have any injuries from the accident that would affect his performance. (*Id.* at 32-33.) Officer Martin also made sure that the environment in which the tests were conducted was

adequate, with clear, sunny weather, no bright lights, and a flat, dry, debris-free surface area. (*Id.* at 34-35.) Officer Martin then conducted three tests, the horizontal gaze nystagmus test, the walk-and-turn test, and the one leg stand test, all of which Defendant failed. (*Id.* at 30-36.) During the first test, the horizontal gaze nystagmus test, the Defendant exhibited six out of six clues indicating intoxication. (*Id.* at 34.) On the second test, the walk-and-turn test, Defendant started the test prior to being instructed to do so, lifted his arms off of his side to maintain his balance, and did not complete the turn properly. (*Id.*) Finally, on the one leg stand test, Defendant was unable to stand with one foot off the ground and immediately kept placing his foot back down. (*Id.* at 34-35.)

As a result of his observations and tests, Officer Martin determined that Defendant was not in a condition in which it was safe for him to drive. (*Id.* at 36.) Officer Martin placed Defendant under arrest and transported to the station for a chemical breath test. (*Id.*) At 4:26 PM that day, Defendant was offered and refused to submit to the breath test. (*Id.* at 39-40.)

**B. Procedural Background**

Defendant was charged with four offenses: (1) Failure to Maintain Proper Control, in violation of 36 C.F.R. § 4.22(b)(3); (2) Refusal to Submit to a Chemical Test for

alcohol, in violation of 36 C.F.R. § 4.23(c)(2); (3) Driving

Under the Influence of alcohol in violation of 36 C.F.R. §

4.23(a)(1); and (4) Driving Across a Lawn Area, in violation of

36 C.F.R. § 4.10(a). A bench trial by Magistrate Judge T.

Rawles Jones, Jr. occurred on April 12, 2012. (Tr. at 1.) In

trial, Defendant was found guilty of all charges except for

charge (4), Driving Across a Lawn Area. (*Id.* at 68-69, 80.)

On April 27, 2012, Defendant appealed the Magistrate

Judge's decision on his Driving Under the Influence of alcohol

conviction. [Dkt. 1.] Defendant filed his brief in support on

September 14, 2012. [Dkt. 8.] The Government filed its

opposition brief on September 21, 2012. [Dkt. 9.] Defendant

filed a reply on September 26, 2012. [Dkt. 10.] A hearing on

Defendant's appeal was held before this Court on September 28,

2012. [Dkt. 11.]

Defendant's appeal is before the Court.

## II.    Standard of Review

Federal Rule of Criminal Procedure 58(g)(2)(D)

provides that "[t]he scope of an appeal [from a magistrate

judge's order or judgment to a district judge] is the same as in

an appeal to the court of appeal from a judgment entered by a

district judge." Thus, when conducting an appellate review of a

magistrate judge's judgment of conviction pursuant to Federal

Rule of Criminal Procedure 58(g)(2)(B), a "district court

utilizes the same standards of review applied by a court of appeals in assessing a district court conviction" rather than conducting a "trial *de novo*." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005).

"A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'" *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995), *cert. denied*, 516 U.S. 935 (1995)). In reviewing a challenge to the sufficiency of the evidence to support a conviction, a court must determine "whether there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction." *United States v. Pasquantino*, 336 F.3d 321, 332 (4th Cir. 2003) *aff'd*, 544 U.S. 349 (2005) (citing *United States v. Burgos*, 94 F.3d 849, 860 (4th Cir. 1996) (en banc)). In determining whether the evidence in the record is substantial, the court must "examine whether there 'is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *Pasquantino*, 336 F.3d at 332 (quoting *Burgos*, 94 F.3d at 862). The Fourth Circuit has emphasized that under this appellate review, the court "is not to determine whether the reviewing court is convinced of guilt beyond reasonable doubt," but rather whether

the evidence could support "'any rational determination'" of the
defendant's guilt beyond a reasonable doubt when viewing all of
the evidence and corresponding reasonable inferences in the
light most favorable to the Government. *Burgos*, 94 F.3d at 863
(quoting *United States v. Powell*, 469 U.S. 57, 67 (1984)).
Under this standard, "[r]eversal for insufficient evidence is
reserved for the rare case 'where the prosecution's failure is
clear.' *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir.
1997) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)).

### III.    Analysis

Defendant challenges his conviction for drunk driving
by arguing that there was insufficient evidence that he was
intoxicated at the time he was driving and the accident
occurred. (Def. Br. [Dkt. 8] at 3.) Specifically, Defendant
characterizes the government's case as relying only on the fact
of the accident itself and on evidence showing that Defendant
was intoxicated when he was arrested approximately forty minutes
after the accident occurred. (*Id.* at 4-5, 8.) As a result,
Defendant argues that the government failed to present evidence
connecting Defendant's condition while operating the vehicle to
his condition when he was arrested, and thus there was
insufficient evidence of his guilt beyond a reasonable doubt.
(*Id.* at 4.) In support, Defendant relies on a number of cases,
citing in particular *United States v. DuBois*, 645 F.2d 642, 644

7

(8th Cir. 1981); *Coffey v. Commonwealth*, 116 S.E. 2d 257, 257-58
(Va. 1960); *Fowlkes v. Commonwealth*, 74 S.E. 2d 683, 684 (Va.
1953); and *Bland v. City of Richmond*, 55 S.E. 2d 289, 290 (Va.
1949). (Def. Br. at 4-8.)

The Court concludes that Defendant's arguments do not
overcome the "'heavy burden'" that a "defendant challenging the
sufficiency of the evidence to support his conviction" bears.
*Beidler*, 110 F.3d at 1067. To begin, the Court finds the cases
on which Defendant relies to be neither controlling nor
factually persuasive for Defendant's position. None of the
cases are binding in the Eastern District of Virginia or in the
Fourth Circuit. Moreover, the facts in those cases differ from
the facts here in the following crucial respects: there was a
complete lack of evidence regarding the defendant's actions or
condition at the time of the accident; there was a period of
time following the accident in which the defendant was
unsupervised prior to an officer's observation, testing and
arrest of defendant; and there was evidence of intervening
drinking between the accident and the much later testing and
arrest. In fact, the court in *Dubois* specifically made this
distinction. The court there held that evidence of intoxication
at the time of arrest was insufficient to show he was
intoxicated when the accident occurred "where there is a gap
between the accident and the test during which the defendant is

not in custody or otherwise supervised and has consumed alcohol"
and "when there was little or no evidence of intoxication or
drinking at the earlier time."  645 F.2d at 644.  The court
contrasted this with a situation where a defendant was "under
the control of officers or others and consumes no more alcohol"
prior to assessments being made about his intoxication and
subsequent arrest.  *Id.*

Thus, the *DuBois* court relied on the following facts
in its finding of insufficient evidence.  First, the minimal
evidence regarding the defendant's condition while operating his
vehicle consisted of the fact that after passing another car, he
had hit a drunk pedestrian who may or may not have been in the
road at that time, and testimony that witnesses did not believe
the defendant was intoxicated immediately prior to the accident.
*Id.* at 643-44.  Second, there was a gap of over two hours in
between the time of the accident and the time of defendant's
arrest and testing.  *Id.* at 643.  Third, although the defendant
was in the presence of others during the entire intervening
period, there was testimony that these witnesses observed the
defendant consume three to five drinks during that time.  *Id.*

Similarly in *Coffey*, the officer testified that he
"did not know the exact time of the accident" and "did not know
what [the] accused's condition was at the time the accident
occurred because, as he explained, he did not arrive at the

scene until one hour later.  116 S.E. 2d at 258.  There was no
other evidence presented about the defendant's condition or
actions at the time of the accident (an accident in which, it
should be noted, the defendant was the victim).  *Id.* at 257-58.
More crucially, there was testimony that a witness gave the
defendant a drink of whiskey after the accident.  *Id.*

Likewise, in *Fowlkes*, there was no evidence about the
time of the accident or the defendant's actions or conditions
leading up to and during the accident.  74 S.E. 2d at 683-84.
In fact, there were no witnesses to the accident and the
arresting officer testified he did not know how much time had
intervened between the accident and his arrival at the scene.
*Id.*  The evidence in *Bland* included similar facts as in *Fowlkes*,
as well as testimony from witness arriving at the scene at some
time after the accident that the defendant was absent from the
scene for several minutes.  55 S.E. 2d at 289-90.

The facts in the case at hand do not meet the three
characteristics present in the cases described above.  First,
the government here did present evidence regarding Defendant's
condition and actions immediately surrounding the accident.
Defendant characterizes this evidence as solely the fact of the
accident itself, and contests that this is not evidence of
Defendant's condition while he was driving.  (Def. Br. at 7-8;
Def. Reply at 1-2.)  However, contrary to Defendant's

assertions, the government relies not only on the accident's occurrence but also on testimony that the accident was a direct result of defendant's decision to drive "alarmingly fast" around an off-ramp with a "dramatic" corner and "severe curve" followed by a "very short merge onto the Parkway." [Govt. Opp. at 5-6; Tr. at 11, 18-19.] As a matter of common sense, this is strange and dangerous driving. Therefore, it is the Defendant's behavior and decision-making *immediately prior* to the accident as illustrated by this erratic driving behavior, rather than the accident itself, that gives rise to an inference about Defendant's condition while he was driving. Moreover, the government also presented testimony from a witness to the accident and its aftermath in support of Defendant's condition immediately surrounding the accident. That witness, Ms. Mackay-Monheim, stated that immediately after the collision, she pulled over, called 911, and spoke with defendant. (Tr. 14-15.) She stated that she found defendant's behavior at that time "odd" and that he "was oddly calm" unlike the other participants in the accident who were "quite upset and rather frightened" and "upset and quite agitated." (*Id.* at 16.)

Second, although there was a gap in between the accident and the officer's arrival, testing of, and arrest of Defendant, this gap was unlike those in the cases discussed above. In this case, the time of the accident is relatively

clear (approximately 2:00 PM), and witnesses observed the accident occur. (*See* Tr. at 11-16.) In addition, Defendant was in the presence of and supervised by other persons from the time of the accident through the time of the officer's arrival. (*Id.* at 14-16, 25.) There was no evidence that Defendant ever left the scene of the accident or was out of the presence of other persons at any time.

Third, unlike in *DuBois* and *Coffey*, there is no evidence that Defendant consumed any alcohol after the accident. Instead there is evidence, in the form of Defendant's own statements, that Defendant did not have anything to drink. The officer testified at trial that when he arrived at the accident scene, he "asked [Defendant] if he had had anything to drink"— without any qualifications as to when or where such drinking had occurred—and Defendant unequivocally "stated that he had not." (Tr. at 25.) Contrary to Defendant's claims, the plain meaning of this answer is that Defendant denied drinking *at any point*, including after the accident. As a result, the Court concludes that the facts here are readily distinguishable from the cases Defendant cites.

Moreover, the Court is convinced that the evidence reviewed in its totality is sufficient to sustain Defendant's conviction. Defendant's remaining arguments consist of attacking the sufficiency of individual pieces of evidence

isolated from the overall record in the case. (*See* Def. Reply
1-4 (critiquing the inferences raised from the manner of
Defendant's driving, Ms. Mackay-Monheim's observations about
Defendant's behavior in contrast to the other accident
participants, Defendant's failure of the Field Sobriety Tests,
and his refusal to take a breathalyzer test.) This is contrary
to the Fourth Circuit's guidance that "the complete picture that
the evidence presents" is "[c]ritical to our review of
sufficiency challenges." *Burgos*, 94 F.3d at 863. As the Fourth
Circuit noted, "examin[ing] evidence in a piecemeal fashion" is
inappropriate because "[w]hile any single piece of evidence,
standing alone might have been insufficient," what matters is
that a "rational [factfinder] could infer from the totality of
the evidence" that defendant was guilty beyond a reasonable
doubt. *Id.* (quoting *United States v. Douglas*, 874 F.2d 1145,
1153 (7th Cir. 1988), *abrogated on other grounds by United
States v. Durrive*, 902 F.2d 1221, 1228 (7th Cir. 1990), and
*cert. denied*, 493 U.S. 841, 110 S.Ct. 126, 107 L.Ed.2d 87
(1989)). "The focus of appellate review, therefore, of the
sufficiency of evidence to support a conviction is on the
complete picture, viewed in context and in the light most
favorable to the Government, that *all* of the evidence
portrayed." *Burgos*, 94 F.3d at 863 (emphasis added).

When properly viewing the complete picture portrayed
by the totality of the circumstances, circumstantial and direct
evidence, and all of the evidence in context and in the light
most favorable to the Government, the Court concludes that there
"is evidence that a reasonable finder of fact could accept as
adequate and sufficient to support a conclusion of a defendant's
guilt beyond a reasonable doubt." *Pasquantino*, 336 F.3d at 332
(quoting *Burgos*, 94 F.3d at 849). The evidence of Defendant's
reckless and erratic choice to drive "alarmingly fast" around a
dangerous off-ramp and merge area, his "odd" behavior
immediately following the accident, continuous presence around
witnesses before, during, and after the accident, and lack of
testimony from witnesses about viewing him consume any alcohol
after the accident, raise inferences about Defendant's condition
while driving. (Tr. 11, 14-16, 19, 24-25.) These inferences,
paired with later evidence (including Defendant's later absolute
denial of drinking, the officer's observation of a "strong odor
of alcohol while in [Defendant's presence," Defendant's failure
of multiple Field Sobriety Tests, and Defendant's refusal to
take a breathalyzer test), produce an overall picture of
"substantial evidence in the record . . . to support the
conviction" of drunk driving. (Tr. 25, 30-36); *Pasquantino*, 336
F.3d at 332; *see United States v. Arias*, 213 F. App'x 230, 233
(4th Cir. 2007) (finding sufficient evidence of drunk driving

where there was testimony regarding defendant's "strange" driving, his behavior immediately after the accident, and his later failure of two field sobriety tests).

"[R]eversal of a conviction on grounds of insufficient evidence is "'confined to cases where the prosecution's failure is clear.'" *Pasquantino*, 336 F.3d at 332 (quoting *United States v. Jones*, 735 F.2d 785, 791 (4th Cir. 1984) (quoting *Burks*, 437 U.S. at 17)). This is not such a case. Therefore, the Court finds that there was sufficient evidence to support a reasonable fact-finder's conclusion of Defendant's guilt beyond a reasonable doubt.

## IV.    Conclusion

For the foregoing reasons, the Court will affirm the decision of the Magistrate Judge and uphold Defendant's conviction for Driving Under the Influence of Alcohol.

An appropriate Order will issue.


/s/

October 11, 2012                 James C. Cacheris
Alexandria, Virginia    UNITED STATES DISTRICT COURT JUDGE